**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BASEM M. HUSSEIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  CIV-07-0439-F |
| | ) | |
| DUNCAN REGIONAL HOSPITAL, | ) | |
| INC. d/b/a DUNCAN REGIONAL | ) | |
| HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Cross-motions for summary judgment are before the court: Defendants' Motion for Summary Judgment, filed March 2, 2009 (doc. no. 137), and Plaintiff's Motion for Summary Judgment, filed March 16, 2009 (doc. no. 144).  Both motions have been fully briefed and are ready for determination.

## I.  Introduction

### *Summary of Events*[1]

Plaintiff Basem M. Hussein, a medical doctor, applied for and was granted *locam tenens* privileges with Duncan Regional Hospital, Inc. ("the hospital") for a two-week period in April of 2004.  In that capacity, Dr. Hussein provided radiological services to the hospital, reading radiographic films.  Within a couple of days of beginning this work, however, Dr. Hussein left the hospital and did not return, asserting that the hospital was requesting that he read too many films per day.  Dr.

---

[1]The purpose of this section is to provide context for the court's rulings.  Except where otherwise noted, facts stated as such in this section may be in dispute.

Hussein contended that requiring him to read films at such a high rate was a risk to patient safety.

After meetings of the hospital's credentialing committee, the medical executive committee, and the board of directors, Dr. Hussein's privileges at Duncan Regional Hospital were terminated.   The hospital submitted a report to the National Practitioner's Data Bank (NPDB) in July of 2004, indicating that Dr. Hussein's temporary privileges had been terminated and that clinical privileges had been denied to Dr. Hussein.   The Report stated that "During the course of exercising temporary privileges, Dr. Hussein deserted the hospital and patients jeopardizing patient care." (Doc. no. 137, ex. J, unnumbered p.4.)   It is undisputed that prior to the submission of this report to the NPDB, the hospital did not provide Dr. Hussein with notice or an opportunity to be heard.

*Summary of the Parties' Claims and Arguments*

Based on the events described above, Dr. Hussein brings this action asserting various tort claims against the hospital and two individual employees of the hospital, Scott Street (alleged to be the president and CEO of the hospital) and Curtis Holmes (alleged to be the hospital's Radiological Manager).   Per the Second Amended Complaint, plaintiff's claims (also referred to in this order as theories of liability) are:

-- intentional interference with contractual relationships,

-- defamation,

-- intentional infliction of emotional distress, and

-- gross negligence.[2]

---

[2]The court recently denied a motion to amend the complaint to include a breach of contract claim and a civil rights claim for denial of due process.  Nothing in this order should be construed as addressing those types of claims.

Defendants have moved for summary judgment in whole or in part, urging various arguments including the contention that Dr. Hussein released his claims when privileges were negotiated.  (The release carries Dr. Hussein's name but there is a dispute as to whether he actually signed it; if he is found to have signed it, there is a dispute as to its enforceability.)  Defendants also argue that there is no evidence to support each of the elements of plaintiff's various theories of liability.

Plaintiff has moved for summary judgment, arguing that he is entitled to judgment as a matter of law on each of his various theories of liability.  Among other things, plaintiff argues that defendants are not entitled to immunity under the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. §11101 *et seq*., passed in 1986, or under Oklahoma's version of the HCQIA passed in 1987 at 76 O.S. 2001 §§ 24 *et seq*.  Plaintiff's motion seeks a determination regarding this issue.

Plaintiff also argues that defendants were required by these statutes (and by other sources, such as statements at the NPDB website and in NPDB guidebooks) to give plaintiff notice and an opportunity to be heard before taking the actions they did.  Plaintiff further argues that, as a matter of law, he cannot have waived his entitlement to notice and an opportunity to be heard as defendants contend he did by signing the release.  The parties argue about the degree to which provisions in the hospital's bylaws and Fair Hearing Plan govern Dr. Hussein's entitlement to notice and an opportunity to be heard.  While all of these arguments may be relevant to the claims and defenses in the sense that they may provide fodder for the parties' positions as to whether defendants' conduct was or was not tortious, none of these arguments provides a basis for summary judgment for either side because this action alleges no breach of contract claim or denial of due process civil rights claim.

## II. Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## III. Discussion

### Facts in Dispute

The genuineness of Dr. Hussein's signature on the signature page of the release is in dispute.  (Doc. no. 137, ex. B, unnumbered p. 3.)

If Dr. Hussein did sign the release, then there are fact questions regarding the manner in which the release was signed and negotiated.  For example, there is insufficient evidence in this record to determine, as a matter of law, whether the parties to the alleged release enjoyed equal bargaining power.[3]

---

[3]This issue is material because plaintiff argues that the release is an unenforceable (continued...)

There are disputed fact questions regarding the care, or lack of care, with which the hospital investigated the events involving Dr. Hussein.

There are disputed fact questions regarding the accuracy of the hospital's report to the NPDB, such as whether Dr. Hussein deserted the hospital or jeopardized patient care. The report also states that Dr. Hussein's privileges were terminated, but there are fact questions as to whether Dr. Hussein's privileges were actually terminated by the hospital or whether his privileges had expired prior to any purported termination.

There is a disputed fact question as to whether the two individual defendants acted at all times within the scope of their duties for the hospital.

There are disputed fact questions as to whether defendants' actions were malicious, in bad faith, or otherwise improperly motivated.

There are disputed fact questions regarding plaintiff's damages. Although defendants argue there is no evidence of damages, in his affidavit Dr. Hussein states that defendants' actions have caused him to lose contracts and that his income has dropped precipitously following the events in question. (Doc. no. 156, ex. 20, p. 6, ¶24.)[4] Although somewhat conclusory, this testimony is within Dr. Hussein's first-

---

[3](...continued)
exculpatory clause. *See*, Schmidt v. U.S., 912 P.2d 871 (Okla. 1996) (unequal bargaining power one of three conditions which must be met in order to find an exculpatory clause enforceable).

[4]Defendants argue that Dr. Hussein's affidavit is a sham affidavit. On certain topics, such as the questionable validity of the signature on the release, the affidavit is extremely detailed. In this regard, the affidavit is also consistent with much of Dr. Hussein's deposition testimony. For example, Dr. Hussein testified at his deposition that he may have reason to doubt that the signature on the release was his. This testimony is consistent with the statement in the affidavit that Dr. Hussein believes the release document is not authentic and is a forgery. The April 6, 2009 affidavit of Jackie Greenwood of Novus Medical, LLC (doc. no. 181, ex. 5) also suggests fact issues regarding the authenticity of Dr. Hussein's signature on the release, further supporting the court's conclusion that Dr. Hussein's affidavit is not a sham affidavit and is properly considered at this stage.

hand knowledge and is also consistent with common sense inferences derived from other evidence.

*Potentially Dispositive Legal Issues*

Despite the above list of disputed facts, summary judgment would be appropriate if the fact disputes were rendered immaterial by the parties' potentially dispositive legal arguments.

As stated earlier, plaintiff argues that defendants are not entitled to immunity under the federal HCQIA, 42 U.S.C. §§ 11111 *et seq.*, or under Oklahoma's version of the HCQIA, 76 O.S. 2001 §§ 24 *et seq.*[5]  These Acts  provide immunity for a professional review body and the members and staff of such a professional review body, persons who contract with such a professional review body, and persons who participate with or assist the body with respect to the action (this last phrase appears only in the federal statute); this immunity is only provided, however, if certain conditions are met.[6]  *See*, 42 U.S.C. §11111(a)(1) in combination with §11112(a),(b); and 76 O.S. 2001 § 25 in combination with § 28.A.B.[7]  The conditions for immunity

---

[5]The parties' briefs do not discuss the degree to which the federal act may pre-empt the state act if, for example, the federal act provides broader immunity.  The court does not address that issue except to state that it has not called for briefing regarding pre-emption because it does not appear that doctrine would change any of the results stated in this order.

[6]No party argues that any of the defendants do not come within the definition of a professional review body and its staff and members as defined in these statutes.  *See*, 42 U.S.C. § 11151(11); 76 O.S. 2001 § 24.  The parties' briefs presume all defendants come within the definition, and the court therefore presumes likewise.

[7]Plaintiff also relies on 76 O.S. 2001 § 29 for his argument that notice and an opportunity to be heard were required.  Section 29 provides that in an emergency, a professional review body may act immediately to prevent danger without conducting a prior hearing or giving notice provided that notice and an opportunity for hearing follow within three days.  Plaintiff's argument is that implicit in this provision is a requirement that absent an emergency, notice and opportunity for a hearing must always be given prior to a professional review body taking action.  That argument is a bit of a leap.  Regardless, the court need not decide whether § 29 implicitly requires notice and an
(continued...)

under these sections include notice and an opportunity to be heard prior to a report being made to a body such as the NPDB.  Id.  As it is undisputed that Dr. Hussein was not given any notice or opportunity to be heard prior to the hospital's report to the NPDB, the court concludes that defendants are not entitled to immunity under 42 U.S.C. §11111(a)(1) of the HCQIA or under 76 O.S. 2001 § 25.  To the extent that plaintiff's motion for summary judgment requests such a determination, the motion will be granted.[8]

The court rejects defendants' argument that Oklahoma law makes judicial intervention into matters regarding medical staff privileges improper as a matter of law.  The Oklahoma case cited by defendants for this proposition, <u>Ponca City Hospital, Inc. v. Murphree</u>, 545 P.2d 738 (Okla. 1976), has been, to some extent, superseded by statute as recognized in <u>Smith v. Deaconess Hospital</u>, 161 P.3d 314, 317 (Okla. 2007).  As stated in <u>Smith</u> at 317, "the immunity once enjoyed by private hospitals under the common law, has been superseded by... statute [76 O.S. 2001 § 28]."  (To reiterate, §28 sets out conditions which must be met in order for the protection from liability set out in §25 to apply.)  "By the terms of the act, there is no blanket immunity to peer review bodies.  However, the peer review body will be protected from damages liability if all of the requirements of 76 O.S. 2001 § 28 are met."  *Id*.

---

[7](...continued)
opportunity to be heard in all cases because there is no breach of contract claim or lack of due process civil rights claim.

[8]No party has suggested that defendants Holms or Street might be entitled to immunity under 76 O.S. 2001 § 26 or 42 U.S.C. §11111(a)(2), which provide immunity to persons who provide information to a peer review body.  Notice and a hearing are not conditions for this type of immunity to apply.  Nothing in this order is intended to foreclose the possibility that defendants Holmes or Street might be found immune from suit under these provisions at trial, should plaintiff's claims against either of these individuals turn out to be based on providing information to a peer review body.

Defendants also contend that statements occurring in the peer review process are privileged and are not actionable as defamation, as a matter of law. Defendants cite Meistrell v. McPhail, 788 P.2d 1387 (Okla. Ct. App. 1989) for this proposition. Meistrell, however, depends upon 76 O.S. 1981 § 16, a statute in effect at the time that lawsuit was filed. *Id.* at 1388. Section 16 has since been repealed and replaced with 76 O.S. 2001 § 25 which is limited by the conditions of § 28. Meistrell is also distinguishable on its facts. The court rejects defendants' contention that the alleged defamatory statements are not actionable as a matter of law.

The court next addresses the parties' legal arguments concerning the release and its enforceability.

Plaintiff argues that even if the types of claims alleged in this action are theoretically waivable (a proposition with which plaintiff does not agree), the release in question is an unenforceable exculpatory clause. In Oklahoma, while exculpatory agreements are generally enforceable, they are distasteful to the law. Schmidt, 912 P.2d at 874. To be enforceable, the exculpatory clause must pass a gauntlet of judicially-crafted hurdles: (1) the language must evidence a clear and unambiguous intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages; (2) at the time the contract containing the clause was executed there must have been no vast difference in bargaining power between the parties; and (3) enforcement of the clause must not be injurious to public health, public morals or confidence in administration of the law or so undermine the security of individual rights vis-a-vis personal safety or private property so as to violate public policy. *Id.*

With regard to the first hurdle for enforceability, clarity of coverage, the parties do not dispute, and the court concurs, that the pertinent language of the release is clear and that the release, if signed and otherwise enforceable, clearly and unambiguously releases the types of claims alleged in this action.

With respect to the second hurdle for enforceability, the question of whether there was a vast difference in bargaining power, the court finds the evidence is insufficient to determine this issue at this stage.

As to the third issue, the question of whether the release if applied to the types of claims alleged in this action violates public policy, the court finds that neither party has adequately briefed this question and that it should not be determined without developed advocacy.[9]

For these reasons, the court cannot now conclude as a matter of law whether the release, if signed, is or is not enforceable.  Thus, the disputed fact questions regarding the signing of the release and the circumstances of its negotiation, remain material.

Finally, defendants argue that there is a lack of evidence to support the elements of each of plaintiff's claims, putting the onus on plaintiff to identify evidence to support each element of each claim.  Having compared the elements of each claim to the record,  the court concludes -- with one important exception discussed below -- that taken as a whole, the record and inferences favorable to plaintiff sufficiently support plaintiff's claims so as to avoid summary judgment in defendants' favor.

The exception is the court's determination that the record does not show a viable claim for intentional infliction of emotional distress (IIED claim).  As stated in Gaylord Entertainment Co. v. Thompson, 958 P.2d 128 (Okla. 1998), to support this type of claim a plaintiff must show that defendants engaged in conduct that was not

---

[9]Defendants argue that a party may release another party from acts of negligence and that public policy does not, in such cases, prohibit exculpatory contracts, citing Trumbower v. Sports Car Club of America, Inc., 428 F.Supp. 1113 (W.D. Okla. 1976).  *See also*, Schmidt, 912 P.2d at 874 and at nn.7-15 (discussion of contracts which purport to excuse torts of willful injury as opposed to contracts which excuse mere negligence).  The court assumes it will be required to decide this public policy issue at trial.  Accordingly, in their trial briefs, the partes are **DIRECTED** to address the question of whether it would be a violation of Oklahoma public policy to enforce the release with respect to each type of claim that survives this order.

only unreasonable but also was beyond all possible bounds of decency in the setting in which it occurred and was such that it can be regarded as utterly intolerable in a civilized community.  *Id.* at 149, n.93.

In response to defendants' arguments on this point, plaintiff merely lists the elements of an IIED claim and states that "Defendants intentionally reported Dr. Hussein to the NPDB without any due process." (Doc. no. 156, pp. 20-21.) Plaintiff's moving brief, which argues that plaintiff is entitled to summary judgment on the IIED claim, states that defendants did not conduct an investigation or have supporting documentation before reporting to the NPDB, and that the hospital knew a negative entry into the NPDB would be a black mark on Dr. Hussein's record.  Taking all of these arguments as true, they do not support an intentional infliction of emotional distress claim.  Furthermore, a viable IIED claim must cause physical suffering or injury.  *Id.*  Although challenged on this point by defendants' motion, plaintiff has not identified any evidence suggesting he suffered physical injury as a result of defendants' conduct.  (Plaintiff testified at his deposition that he had sleeplessness related to IRS matters, see doc. no. 170, ex. 12, but this testimony does not satisfy the physical injury requirement.)   For both of these reasons, either of which would be sufficient standing alone, the court concludes that defendants are entitled to summary judgment in their favor on plaintiff's IIED claim.

Having determined all of the parties' potentially dispositive legal arguments, the court finds that except for the IIED claim, none of these arguments moot the many disputed fact questions.  Other than with respect to the IIED claim, there are genuinely disputed material facts which prevent summary judgment in favor of either side.

## IV.  Conclusion

After careful consideration of the parties' submissions, the record, the allegations and the relevant authorities, defendants' motion for summary judgment is

**GRANTED** in part and **DENIED** in part.  Defendants are entitled to summary judgment in their favor on plaintiff's intentional infliction of emotional distress claim. Otherwise, defendants' motion is denied.

Plaintiff's motion for summary judgment is also **GRANTED** in part and **DENIED** in part.  Plaintiff's motion is granted to the limited extent that it seeks a determination from the court as to whether any of the defendants are entitled to immunity under 42 U.S.C. §11111(a) or 76 O.S. 2001 § 25.  As a matter of law, defendants are not entitled to immunity under these statutes because the conditions necessary for this type of immunity to attach (here, notice and an opportunity to be heard) have not been satisfied.  The balance of plaintiff's motion for summary judgment is denied.

The claims that survive this order are plaintiff's claims of 1) intentional interference with contractual relationships, 2) defamation and 3) gross negligence. The parties' proposed jury instructions and special interrogatories, if any, must be tailored to the remaining claims and issues.  The court will likely set an earlier than normal conference for discussion of the parties' proposed jury instructions.

Dated this 1st day of May, 2009.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0439p046.wpd

-11-