## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BASEM M. HUSSEIN,<br>    an individual<br>        Plaintiff, | )<br>)<br>)<br>) |
| -v- | )   Case No. 5:07-cv-00439-F<br>) |
| (1)   DUNCAN REGIONAL HOSPITAL, INC.<br>(2)   NOVUS MEDICAL, LLC,<br>(3)   SCOTT STREET, an individual and<br>(4)   CURTIS HOLMES, an individual<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANTS' SUPPLEMENTAL MOTION IN LIMINE REGARDING DUE PROCESS AND HCQIA VIOLATIONS, BOTH OF WHICH ARE AT THE CORE OF PLAINTIFF'S CASE IN CHIEF

COMES NOW the Plaintiff, by and through counsel, and objects to the timeliness of this motion, and the fact it has been filed in bad faith, as Defendants have not only litigated and briefed the issues, but have always understood them to be at the Core of Plaintiff's case since the Second Amended Complaint (Doc. 55, mentioned throughout including last paragraph). In support, Plaintiff states:

1. Plaintiff has consistently argued the remaining tort claims each require proving violation of due process and improper use of National Practitioner Databank (NPDB)(under federal HCQIA law). See Doc 55.

2. Throughout litigation,[1] Defendants have argued against Plaintiff's right to due process, citing a "Consent Waiver" form as their sole defense.

---

[1] See Exhibit 1 Depo of DRH President Street understanding the entire lawsuit to be based on NPDB entry.

3.  Central to Plaintiff's case is the fact Defendants were fully aware of their duty to provide due process prior to publishing an adverse event entry into the NPDB, and that Defendants knowingly violated Dr. Hussein's rights. The NPDB website clearly spells out the requirement of a good faith investigation and due process for a physician prior to entry, as do state and federal law, which were incorporated in Defendant Hospital's Bylaws and Fair Hearing Plan (documents passed out to every physician who works there). Exhibit 4 (Hospital's sole HCQIA designee, for purposes of NPDB entries, states knowledge of bylaws and of other relevant federal laws such as EMTALA being applicable to hospital). Thus, the absence of investigation notes, the failure to designate an investigative committee, the numerous deposition testimonies supporting Defendants' full knowledge of the due process requirement (Exs. 1-8) and the fact that Defendants stated in discovery responses that no documents of any type of investigation were responsive, all support Plaintiff's case regarding Defendants' culpability and willful conduct. Please see Final Pretrial Report (Doc. 326), showing Plaintiff's three remaining claims involve analysis of due process violation pursuant to HCQIA, and Defendants' full understanding of Plaintiff's case centering around the NPDB report and violation of due process. See e.g. Doc. 184 (Notice to take 30(b)(6) deposition and listing on page 2 credentialing and peer review to be discussed); see also Ex. 6 (discussion at 30(b)(6) deposition of NPDB entry and proper peer review at heart of case).

4. Defendants seek to prohibit "Plaintiff, Plaintiff's attorney, or anyone else, from asking any question, making any statement, or introducing any evidence, directly or indirectly" regarding Defendants' egregious violations of due process under the HCQIA or Oklahoma law in the way they adversely reported Plaintiff to the NPDB. Def. Motion at p. 1.  Such request is not brought in good faith and flies in the face of Plaintiff's entire case before this Court, as both parties have exhaustively litigated the matter and briefed it for this Court.

5. In fact, this Court has ruled that Defendants' violations of due process under HCQIA and state law directly made Plaintiff's remaining three claims ripe for trial. Doc. 205; *see also* Order of this Court April 28, 2009 (Doc. 200 at bottom of page 2 stating "The accuracy of defendants' contentions that Dr. Hussein abandoned patients and that his walk-out jeopardized patients ***is put in issue by plaintiff's defamation cla****im… [t]he **accuracy with which these matters were investigated and reported to the National Practitioners Data Bank is also put in issue by plaintiff's gross negligence claim (and possibly by other claims as well).. [a]ccordingly, the documents are highly relevant and material*.")(emphasis added).

6. Plaintiff's Second Amended Complaint identified repeatedly Plaintiff's argument that his harm was a direct result of Defendants' acts and omissions with respect to due process, and their failure to follow HCQIA protocols with respect to the NPDB. See Doc. 55 at p. 3 pa 15, p. 4 pa 16

3

(lack of due process and no "opportunity to be heard") pa 20-21 (individual defendants Street and Holmes "personally approved and participated in" the acts to prevent Plaintiff due process), p. 5 (first cause of action "intentional" interference, suggesting the lack of due process as integral to the proof of Defendants' intent to cause harm to plaintiff) at pa 23 (knowledge of data bank adverse report harming plaintiff and therefore not giving him notice in order to prevent him from defending himself) at pa 24, at pa 25 (improper NPDB entry resulting in loss of job opportunities), p. 6 pa 29 (publication via the databank of untrue statements) pa 30 (Defendants' actions "were intentional and made with malice, spite, and reckless disregard for the truth"—as evidenced by failure to investigate and provide due process) pa 32 (NPDB report resulting in lost job opportunities)' p. 9 pa 39 pa 40, p. 12 final pa. re-addressess and confirms that a jury will be asked to consider the Defendants' acts and omissions with respect violating Plaintiff's rights with respect to the NPDB and purposefully harming him. This Second Amended Complaint was filed February 1, 2008.

7. Defendants' response to Plaintiff's Motion for Summary Judgment (Doc. 137) is riddled with references to federal HCQIA law (42 U.S.C.§ 11101 et seq.), state law (76 O.S. § 25 et seq), and due process[2] arguments. As such,

---

[2] In Proposition I, Defendants argue Dr. Hussein is not entitled to due process; in Proposition II, titled "Great Deference is Granted to Hospital Peer Review, Privileging and Credentialing Decision," centers around Defendants' interpretation of due process in peer review, and cites to both federal and state statutes;

their argument that references to due process and to the federal and state laws are irrelevant, is inaccurate and untrue. These are at the heart and core of Plaintiff's entire case in chief. Ex. 6.

8. Defendants argue that Plaintiff was denied an attempt to bring in a new claim for a constitutional violation under Section 1983. Def. Mot at p. 2. The Court simply stated it would not allow any new claims, and certainly did not rule that a Constitutional Civil Rights Claim under Section 1983 was mutually exclusive with Plaintiff's prima facie case for remaining torts. Rather, this Court has made it clear that Plaintiff should be allowed to develop his prima facie case involving due process violations. Doc. 205; *see also* Doc. 200; *see also* Exhibit 9, Doc. 200 (ruling that such evidence is relevant); FRE 401, 402. In fact, Defendants have litigated, briefed and participated in depositions where the matters of due process and violation of state and federal law were discussed, such that they will easily be able to rebut any such testimony by Plaintiff and will not be prejudiced. Plaintiff should thus be able to present such testimony. *See Morgan v. Valley Ins. Co.*, 2009 WL 3755076 (W.D. Okla. 2009)(Court treating as motion in limine a party's request to exclude prejudicial documents that could not rebutted).

---

Proposition III is Defendants' rebuttal to Plaintiff's argument that the NPDB sham entry was intentional to harm his ability to find work; Proposition IV is Defendants' attempt to show that somehow the entry in the NPDB was not untruthful, a matter that must go to the jury; and Proposition VI again reiterates Defendants' flawed justification for the sham NPDB entry. Essentially, Defendants' entire response to the dispositive motion centers around due process, and whether the NPDB entry was appropriate in light of state and federal law cited. Defendants' argument that all such relevant and prima facie evidence should be excluded is completely and utterly flawed.

9. Due to the strong participation by Defendants at each step of litigation regarding the matters due process and violation of Plaintiff's rights, there is no likelihood to confuse the jury regarding Defendants' acts and omissions. Furthermore, these are Plaintiff's main themes and should proceed to trial. *See In re Cessna 208 Series Aircraft Products Liability Litigation*, 2009 WL 2780223 (D. Kan. 2009)(stating that a document should be excluded under Fed.R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value, *citing United States v. Robinson*, 560 F.2d 507 (2 Cir.1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978)).  In this case, Plaintiff intends to and should be allowed to instruct the jury very deliberately on Defendants' duty under State and Federal Law to give him due process, per his gross negligence, defamation, and intentional interference with business claims.

10. Every hospital must query the NPDB when credentialing a physician, and is therefore aware of the importance of having a clean NPDB report. Defendants drafted bylaws that identified physicians' rights to due process, and were required to follow protocols on the NPDB website prior to reporting. Exhibits 2-3. DRH President Defendant Scott Street admitted he knew of a physician who had indeed received peer review, thereby imputing the knowledge of the due process requirement to the Defendant Hospital. *See* Ex. 1.

11. Medical Staff Coordinator Christy Green admitted that to her knowledge no one at the Hospital attempted to investigate whether the negative entry regarding Dr. Hussein was indeed accurate. Ex. 2.

12. Plaintiff must rely on his witnesses' statements regarding due process violations (lack of investigation and lack of peer review by Defendants), documents tending to prove his case, as well as witness statements regarding the importance of following such protocols for a hospital. Forbidding Plaintiff from establishing his prima facie case will utterly and completely cripple him from having a case at all.

13. Plaintiff incorporates by reference Document 231, wherein Plaintiff identifies and briefs the fact that each remaining tort in his case requires proof of intentional action by Defendants. Defendants' knowledge of due process requirements and willingness to violate such due process will be a matter Plaintiff will be required to prove to prove in order to achieve the threshold of intent for Defendants' actions.

14. Defendants told this Court on April 9, 2009 that the Hospital was without a radiologist for two days after Dr. Hussein left. Exhibit 10. Defendants' entry into the NPDB is a sham entry as other radiologists were credentialed at DRH at the same time Dr. Hussein was there the day he was told to leave. See Exhibits 8, 11 (Curtis Holmes testimony that in truth Dr. Watts was there during the day that Dr. Hussein was asked to leave and that Watts picked up all the radiology reads). In truth, teleradiology was available the

entire time, and Defendant Holmes admitted under oath he had told Dr. Hussein that any excess reads could be sent to teleradiology in that same deposition.

## CONCLUSION AND PRAYER

This Court should deny Defendants' motion to keep out key testimony and evidence, due to the fact the two very matters they intend to keep out with their motion are at the very heart and core of Plaintiff's case in chief. Plaintiff has demonstrated that the "intentional" part of his first tort, intentional interference with prospective business relations, is the fact that Defendants knew what proper peer review was (involving due process) and purposefully, knowingly, recklessly, and willfully violated such due process in order to interfere with Plaintiff's livelihood, knowing it would be a "black mark" for Plaintiff. See Exhibits 1, 2, 5 at pp. 183-184 (Defendant DRH President Street who participated in every key meeting leading up to the sham entry without giving Dr. Hussein notice, states he was aware of other physicians besides Plaintiff who had received proper peer review – thereby imputing to DRH the knowledge that it should have given Dr. Hussein the same peer review opportunity as the physician Mr. Street recalled), 8 (Defendant Holmes admits he gave notices to physicians about meetings, and planned meetings three weeks out – but failed to give any notice to Dr. Hussein of any key meeting leading up to the sham NPDB entry), 3-4 (DRH NPDB entry designee and medical staff coordinator extensively deposed about the NPDB, HCQIA, and peer review due process, and admits that other radiologists were

credentialed at DRH at same time Dr. Hussein was there, disproving the sham statement Dr. Hussein "deserted" the hospital, and supporting purposeful intentional action by Defendants to prevent due process, and harm Plaintiff).

With respect to defamation, Defendants have also demonstrated throughout litigation their understanding that Dr. Hussein has consistently asserted that Defendants knew they did not have the right (under federal and state law) to access the NPDB and publish the sham entry without first placing him on notice. As such, Defendants' defamation was purposeful and malicious, giving rise to punitive damages. This Court has made that clear in a previous ruling. See Docs. 200, 205.

Lastly, the duty and breach elements of gross negligence have been made extremely clear throughout this lawsuit: that Defendants had a duty under state and federal law (HCQIA – a law all hospitals must abide by in credentialing physicians and checking the databank), to place Plaintiff under notice and give him the right to defend himself. See Exhibit 3 (deposition of DRH NPDB representative stating familiarity with credentialing). There exists an April 14, 2004 query by Ms. Green of the NPDB showing flawless record for Dr. Hussein, a key factor in DRH's decision to grant him privileges. This Court ruled that Defendants had such duty and breached it (Doc. 205), and are therefore not entitled to immunity to torts.

Defendants have been intensely litigating the two issues they intend to keep out, and have demonstrated a clear understanding that the two issues are central

requisite elements for Plaintiff's prima facie case for each remaining claim. As their sole Defense to Plaintiff's argument of due process violation being intentional, reckless, wanton, willful, or malicious, Defendants have countered by stating throughout the litigation that Plaintiff had somehow waived his right to due process.

WHEREFORE, Plaintiff prays Defendants' motion should be denied, and Plaintiff seeks any and all other such relief in law or in equity that the Court should deem just.

Respectfully submitted,

s/ Alexander Bednar
Alexander L. Bednar, Esq., OBA # 19635
204 N. Robinson, Suite 800
Oklahoma City, OK  73102
Telephone: (405) 235-1603
Facsimile:  (405) 232-0587
**COUNSEL FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On this 20th day of November, 2009, I electronically transmitted this document to the Clerk of the Federal Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants. I had a conference with both opposing counsel.

Gregg J. Lytle
Denise Canada
Glen D. Huff
FOLIART HUFF OTTOWAY & BOTTOM
201 Robert S. Kerr
Oklahoma City, OK 73102
gregglytle@oklahomacounsel.com
DeniseDCanada@oklahomacounsel.com
FoliartFirm@oklahomacounsel.com

Attorneys for Defendants, Duncan Regional Hospital,
Curtis Holmes, and Scott Street

s/Alexander L. Bednar
Alexander L. Bednar
